UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK
-------------------------------------------------------
In re

  THE DIOCESE OF BUFFALO, N.Y.,        BK 20-10322 CLB


      Debtor           <u>DECISION & ORDER</u>
-------------------------------------------------------

  THE DIOCESE OF BUFFALO, N.Y.,

     Plaintiff,          AP 20-1009 CLB

 v.

  THE CONTINENTAL INSURANCE COMPANY,
  EMPLOYERS INSURANCE COMPANY OF WAUSAU
  (FORMERLY KNOWN AS EMPLOYERS INSURANCE
  OF WAUSAU A MUTUAL COMPANY FORMERLY
  KNOWN AS EMPLOYERS MUTUAL LIABILITY
  INSURANCE COMPANY OF WISCONSIN), WAUSAU
  UNDERWRITERS INSURANCE COMPANY, SELECTIVE
  INSURANCE COMPANY OF AMERICA (FORMERLY
  KNOWN AS EXCHANGE MUTUAL INSURANCE
  COMPANY), NATIONAL UNION FIRE INSURANCE
  COMPANY OF PITTSBURGH, PA, FIREMAN'S FUND
  INSURANCE COMPANY, CATHOLIC MUTUAL GROUP,
  AND THE NATIONAL CATHOLIC RISK RETENTION GROUP,

     Defendants.
-------------------------------------------------------

      Bond, Schoeneck & King, PLLC
      Stephen A. Donato, Esq., Charles J. Sullivan, Esq.,
      Brian J. Butler, Esq., Grayson T. Walter, Esq., of counsel
      One Lincoln Center
      Syracuse, New York 13202-1355
      Attorneys for The Diocese of Buffalo, N.Y.

      Blank Rome LLP
      James R. Murray, Esq., of counsel
      1271 Avenue of the Americas
      New York, New York 10020
      Attorneys for The Diocese of Buffalo, N.Y.

Charles Mendolera
c/o The Diocese of Buffalo, N.Y.
795 Main Street
Buffalo, New York 14203
Principal

Pachulski Stang Ziehl & Jones LLP
Ilan D. Scharf, Esq., of counsel
780 Third Avenue, 34th Floor
New York, New York 10017
Attorneys for Official Committee of Unsecured Creditors

Gleichenhaus, Marchese & Weishaar, PC
Scott Bogucki, Esq., of counsel
43 Court Street, Suite 930
Buffalo, New York 14202
Co-Counsel for Official Committee of Unsecured Creditors

Peter Starks, Kevin Brown, Richard Brownell
Members of the Official Committee of Unsecured Creditors

Wilmer Cutler Pickering Hale & Dorr LLP
Craig Goldblatt, Esq., of counsel
1875 Pennsylvania Avenue NW
Washington, District of Columbia 20006
Attorneys for The Continental Insurance Company

Shipman & Goodwin LLP
James Pio Ruggeri, Esq., of counsel
1875 K Street NW
Ste 600
Washington, District of Columbia 20006
Attorneys for The Continental Insurance Company

Goldberg Segalla LLP
Jonathan Schapp, Esq., Adam R. Durst, Esq., of counsel
665 Main Street
Buffalo, New York 14203
Attorneys for Employers Insurance Company of Wausau and
Wausau Underwriters Insurance Company

Coughlin Duffy LLP
William Corbett, Jr., Esq., of counsel
350 Mount Kemble Avenue
Morristown, New Jersey 07962
Attorneys for Selective Insurance Company of New York

Gibbons P.C.
Robert Malone, Esq., of counsel
One Gateway Center
Newark, New Jersey 07102
Attorneys for Selective Insurance Company of New York

Kenney Shelton Liptak Nowak LLP
Judith T. Shelton, Esq., of counsel
The Calumet Building
233 Franklin Street
Buffalo, New York 14202
Attorneys for Selective Insurance Company of New York

Carlton Fields PA
Nora A. Valenza-Frost, Esq., of counsel
405 Lexington Avenue
Ste 36th Floor
New York, New York 10174
Attorneys for National Union Fire Insurance Company of Pittsburgh, PA

Schiff Hardin LLP
Joseph M. Fisher, Esq., of counsel
233 S Wacker Drive
Suite 7100
Chicago, Illinois 60606
Attorneys for Catholic Mutual Relief Society of America

Gross Shuman P.C.
Robert J. Feldman, Esq., of counsel
600 Lafayette Court
465 Main Street
Buffalo, New York 14203
Attorneys for Catholic Mutual Relief Society of America

Office of the U.S. Trustee
Joseph W. Allen, Esq.
Olympic Towers
300 Pearl Street, Suite 401
Buffalo, New York 14202
Assistant U.S. Trustee

New York State Office of the Attorney General
Diane C. Hertz, Esq., of counsel
28 Liberty Street
New York, New York 10005-1400
Assistant Attorney General

Woods Oviatt Gilman LLP
Timothy P. Lyster, Esq., of counsel
1900 Bausch & Lomb Place
Rochester, NY 14604
Attorneys for Parish Steering Committee

Jeff Anderson & Associates, PA
Stacey Benson, Esq., of counsel
366 Jackson Street, Suite 100
Saint Paul, Minnesota 55101
Attorneys for Various Defendants

Steve Boyd, PC
Stephen Boyd, Esq., of counsel
40 North Forest Rd.
Williamsville, New York 14221
Attorneys for Various Defendants

Law Offices of Mitchell Garabedian
Mitchell Garabedian, Esq., of counsel
100 State Street, 6th Floor
Boston, Massachusetts 02109
Attorneys for Various Defendants

Chiacchia & Fleming, LLP
Daniel J. Chiacchia, Esq., of counsel
5113 South Park Avenue
Hamburg, New York 14075
Attorneys for Various Defendants

Bucki, Chief U.S.B.J., W.D.N.Y.

In separate applications, the Diocese of Buffalo has moved for the establishment of a claims bar date and the referral of an adversary proceeding to mediation. Because the motions impact each other, this decision addresses both applications. Disputed issues include the appropriate deadline for filing claims, the form of an acceptable proof of claim, the proper notice to potential creditors, and whether mediation is at this time premature.

On February 14, 2019, New York State enacted the Child Victims Act (the "CVA"). *See* 2019 N.Y. Sess. Laws c. 11, § 3. This legislation reopened the statute of limitations to allow victims of child abuse a period of one year from August 14, 2019, to assert claims that were otherwise barred by the passage of time. Thereafter, the state extended this deadline by an additional year to August 14, 2021. *See* 2020 N.Y. Sess. Laws c. 130, § 1. By the end of February 2020, the Diocese had been named as a defendant in more than 200 complaints alleging sexual abuse. More claims were anticipated. In response to this situation, the Diocese filed a petition for relief under Chapter 11 of the Bankruptcy Code on February 28, 2020. Then in March of 2020, after due solicitation of interest, the Office of the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Committee").

The Diocese estimates that more than 400 individuals will eventually make claims for damages arising from child abuse. Prospects for compensation depend significantly upon access to insurance. Even before bankruptcy, various insurance carriers had disclaimed coverage. Consequently, on the same day as the filing of its bankruptcy petition, the Diocese commenced an adversary proceeding for a declaratory judgment to determine the coverage obligations of eight insurance companies.

In connection with the adversary proceeding, the Diocese presents a motion for the entry of an order referring the dispute to mediation (the "Mediation Motion"). The

Diocese contends in its papers that insurance represents "a significant source of potential recovery for abuse claimants," that a determination of insurance coverage is an important precondition to the formation of a confirmable plan, and that mediation will "facilitate a global resolution of underlying insurance coverage issues." The Committee accepts the concept of mediation, but asserts the need for a comprehensive process that involves all interested parties and that aims to achieve a full resolution of claims. Several of the insurance companies named as defendants in the adversary proceeding oppose the use of mediation at this time. They contend that mediation should be deferred until the full identification of claims and their receipt of information that they have requested from the Diocese.

In a separate motion (the "Bar Date Motion"), the Diocese seeks the entry of an order establishing a deadline for filing proofs of claim and approving the form and manner of notice. Generally, the Diocese argues that in order to develop a plan of reorganization, it needs to identify all abuse claimants and to collect detailed information about the nature of their injuries. To this end, the Bar Date Motion makes four specific requests. First, the debtor proposes to set January 15, 2021, as the deadline for filing proofs of claim. Second, the Diocese requests that the Court approve a form of bar date notice and the manner of its distribution and publication. Third, the Diocese asks that abuse victims be directed to use a proof of claim form that includes responses to various questions about their injuries. Fourth, the debtor presents a proposed order that would set protocols for confidentiality of any responses.

The Official Committee of Unsecured Creditors objects to the proposed bar date of January 15, 2021, and instead urges a deadline of August 14, 2021. It contends that the later date will avoid confusion to CVA creditors, in that August 14 coincides with the most recent extension of the statute of limitations for certain abuse claims under New York law. The Catholic Mutual Relief Society of America, one of the defendants in the debtor's adversary proceeding for a declaratory judgment, proposes that additional questions be added to the proof of claim form that the Diocese wishes

Case 1-20-01009-CLB, Doc 172, Filed 09/11/20, Entered 09/30/20 10:27:54, Description: Main Document , Page 6 of 17

to disseminate.

Discussion

Motion to Refer Adversary Proceeding to Mediation

The Court recognizes the potential value of mediation, particularly in situations like the present case, in which legal costs threaten to dissipate resources that might otherwise be used to address the claims of creditors and to advance the mission of the debtor. But mediation provides no guarantee of settlement. Consequently, it must be used with discretion, in ways that minimize the risk of delay in the resolution of claims.

In the Mediation Motion, the Diocese states its desire to achieve a "global resolution of underlying insurance coverage issues." At this time, mediation to achieve this laudatory objective is premature for at least three independently persuasive reasons. First, the Diocese proposes a mediation in the context of an adversary proceeding that involves only some of the parties whose participation is needed to achieve a comprehensive settlement. At the hearing on the Mediation Motion, the debtor also brought a motion for authority to retain an insurance archivist. The archivist had previously worked on limited assignments for the Diocese, but had not yet completed a comprehensive review of records. In granting the retention motion, the Court accepted the argument presented by debtor's counsel in its moving papers, that "it is essential to this Chapter 11 Case that the full extent and scope of the Diocese's insurance coverage is determined by a professional with extensive experience conducting historic audits of a company's past insurance coverage, particularly those policies issued before July 1, 1973." Even before the start of the archivist's new engagement, the Diocese has already identified insurance carriers other than the eight defendants named in the Adversary Proceeding.

Legislative efforts to reopen the statute of limitations were ongoing for several years prior to enactment of the CVA. The Diocese has volunteered no compelling explanation for why it only now seeks to initiate a comprehensive archival investigation

of insurance coverage. Whatever may have been the reason for this delay, the Court finds that mediation is premature until receipt of a complete archival report identifying all of the insurance carriers who might share responsibility for coverage.

Mediation is also premature for a second reason, namely that no settlement is likely until such time as the parties can determine the identity and general nature of all abuse claims. To this end, the Court will consider later in this opinion the debtor's motion for establishment of a claims bar date. The claims bar process is necessary to determine the potential exposure of each particular insurance company. Knowledge of such exposure constitutes the starting point for any discussion among the debtor, the Committee, a mediator, insurers and victims. Without a claim, there exists no claim against insurance. Without a claim against insurance, there exists no coverage dispute in need of mediation.

A matter is ripe for mediation only after litigants have shared the information needed to evaluate their respective rights and defenses. Here, the absence of such exchange is a third basis for finding that mediation is premature. The present dispute over insurance coverage is complicated. It involves hundreds of abuse claims, some of which allegedly occurred decades ago. The parties report difficulty in locating certain of the insurance policies. Despite these complexities, the litigants have exchanged little information. At the time of the hearing on the Mediation Motion, only three of eight defendants had even filed an answer. None of the litigants had provided the initial disclosures required under Bankruptcy Rule 7026 and Rule 26(a) of the Federal Rules of Civil Procedure. The parties had not even started discovery. Nor does it appear that the parties have completed an informal exchange of the information that each side would need to conduct any meaningful discussion of settlement.

For the reasons stated above, mediation is premature at the present time. Nonetheless, the Court trusts that all parties share the same desire to work expeditiously for the development of a confirmable plan. To this end, the debtor must

strive to place the adversary proceeding into a posture for resolution, whether by dispositive motion, trial, or settlement with the assistance of mediation. Fortunately, these alternative paths are not inconsistent. By its response to appropriate discovery demands in the context of litigation, the debtor will concomitantly exchange information that parties in mediation would require. To the extent that the informational needs of mediation differ from those in litigation, interested parties can present supplemental inquiries at a later time. But now is not the time to procrastinate in working for a just and fair resolution of rights. By directing discovery to proceed in the adversary proceeding, the Court aims to advance essential exchanges of information. To this end, the litigation process will allow the Court to set a timetable for discovery, to decide discovery disputes, and to address questions regarding the scope of the release of information.

Bar Date Notice

Bankruptcy Rule 3003(c)(3) states that in cases under Chapter 11, "[t]he court shall fix and for cause shown may extend the time within which proofs of claim or interest may be filed." In the present instance, the setting of a bar date is a necessary first step in the process of developing a plan of reorganization. The special challenge here is to establish a method of effective notice. For reasons explained hereafter, the setting of a bar date is inexorably linked to the process for achieving notice of that deadline.

In *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950), the Supreme Court considered the proper methodology of notice. Writing for the Court, Justice Robert Jackson observed that "when notice is a person's due, process which is a mere gesture is not due process." *Id.* at 315. Notice by publication may be allowed in exceptional situations, "where it is not reasonably possible or practicable to give more adequate warning." *Id.* at 317. Generally, however, notice by ordinary mail is required whenever "the names and post office addresses of those affected by a

proceeding are at hand." *Id.* at 318. In all circumstances, the rule remains that "within the limits of practicality notice must be such as is reasonably calculated to reach interested parties." *Id.*

The Diocese proposes that notice of the bar date be given by mail to individuals whose names it can identify as possible victims of sexual abuse, and to unknown victims through a combination of procedures that include publication in both regional and national newspapers, internet postings, the issuance of press releases and the issuance of requests for the display of notices in public places. Technically, this proposal has the potential to satisfy the notice requirements described in *Mullane v. Central Hanover Bank and Trust Co.* The problem is that the Diocese bases its position on an unproven assumption that the Diocese is likely within a reasonable time to prepare a reliable list of names and addresses for those individuals that it should have reason to identify as possible victims of sexual abuse.

This case is not like a typical commercial filing, in which the debtor can readily identify from its books and ledgers all of the actual and disputed trade creditors. We share concern about whether anyone has conducted a comprehensive review of records, at both the Diocesan and parish levels, for the purpose of identifying every individual who may have reported an instance of abuse. Moreover, because the CVA reopened claims that may have occurred decades ago, existing records may not necessarily include a current name and address. These factors may help to explain challenges that the Diocese has apparently encountered in preparing a complete roster of potential claimants. On March 4, 2020, this Court granted the debtor's motion for permission to place under seal the schedule of CVA creditors. It has taken the Diocese more than six months to file this schedule.

To the extent that they are excluded from the proposed mailing, abuse victims will receive notice of the bar date through means of publication and public postings. But like the situation in *Mullane v. Central Hanover Bank & Trust Co.*, "[i]t would be

idle to pretend that publication alone . . . is a reliable means of acquainting interested parties of the fact that their rights are before the courts." 339 U.S. at 315. We largely avoid this problem, however, by allowing claims to be filed until August 14, 2021, that is, upon the closing of the reopened statute of limitations under New York law.

A bar date operates to cut off the ability of disputed creditors to assert claims in bankruptcy. By making that date coterminous with the statute of limitations, we terminate no rights that a plaintiff could otherwise have asserted outside of bankruptcy. For those creditors who may never have received notice of the bankruptcy or its bar date, any deficiency of notice will have no consequence more adverse than what state law would already impose.

In reopening the statute of limitations, the CVA expressed a policy decision that deserves the respect of this Court. Unless good cause is otherwise demonstrated, we should appropriately honor the decision of New York to allow the assertion of claims through August 14, 2021. Many of the claims against the Diocese involve events that might also serve as the basis for a cause of action against clergy and parishes who do not enjoy the protection of the Bankruptcy Code. A bankruptcy claims bar date of August 14, 2021, will avoid some of the confusion regarding the deadline for victims to take action. This avoidance of confusion inures to the benefit of both claimants and the Diocese. In the Mediation Motion, the Diocese asserted a desire to work toward a global settlement of claims against both the Diocese and its parishes. The common deadline of August 14, 2021, will reduce the likelihood of the problem that might occur if a plaintiff were to commence a timely action against a parish but file a late claim against the Diocese.

By setting a bar date of August 14, 2021, we allow references to deadlines under the CVA to serve as a reminder to take action prior to the bar date in bankruptcy. We appreciate also that in the field of personal injury, legal advertising has become ubiquitous. At no additional cost to the Diocese, entrepreneurial law firms will likely

use television and other media to give prospective plaintiffs a notice more effective than the suggested notice by publication and posting. A common deadline for litigation and proofs of claim will simplify the advertising process and concomitantly facilitate the dissemination of information regarding the bar date. A bar date of August 14, 2021, should also not become a cause for delay, particularly because the parties in the insurance litigation can use this time to receive the report of the insurance archivist and to advance exchanges of information needed as a prerequisite for either litigation or mediation.

      For the reasons stated above, the Court will set August 14, 2021, as the claims bar date in this case.

### Noticing

      The Diocese proposes to give notice of the bar date through a combination of service by ordinary mail, publication and postings. We agree with the suggestion that notice should be mailed to all scheduled creditors and to anyone that the Diocese can identify as having a potential claim arising from an event of sexual abuse. Because the date will coincide with the reopened statute of limitations, the Court sees no need for incurring the special expense of publication in a national newspaper. Otherwise, with one adjustment, the Court will approve the debtor's proposal for publication in regional daily newspapers and for dissemination of notices. At oral argument on the motions, debtor's counsel indicated a willingness to publish a bar date notice in the monthly newspaper of the Diocese. In the short time since that hearing, the Diocese has announced that it is discontinuing the newspaper's print edition. In lieu of that option, the Diocese should direct each of its parishes to distribute the notice of bar date in or with their weekly bulletin for at least eight Sundays between now and August 14, 2021. In anticipation of higher levels of church attendance on special holy days, three of these distributions should occur on the Sunday before Christmas, on Palm Sunday and on Easter.

Proof of Claim Format

The Bar Date Motion further asks that the Court mandate the use of two proof of claim forms, the first for general creditors and the second for those who wish to assert a sexual abuse claim. The form for sexual abuse claims would require responses to specific questions regarding the alleged injury. The rationale and procedure for enforcement of the debtor's request are stated in paragraph 25 of its motion:

> "Because detailed information is needed to process Sexual Abuse Claims, the Diocese proposes that, if a claimant submits a proof of claim asserting a Sexual Abuse Claim using the General Proof of Claim Form, or Official Bankruptcy Form 410, on or before the Bar Date, such claim will be treated as timely filed only if such claimant submits a completed Sexual Abuse Proof of Claim prior to the earlier of the Bar Date and the date which is thirty (30) days following receipt of written notice from the Diocese of the need to complete and submit a Sexual Abuse Proof of Claim."

For the reasons stated hereafter, this portion of the motion is denied.

The Judicial Conference of the United States has prescribed Official Forms for use in bankruptcy proceedings. These include Form 410, which serves as the generally acceptable format for a proof of claim. Its use is then mandated by Bankruptcy Rule 9009(a), which states as follows:

> "The Official Forms prescribed by the Judicial Conference of the United States shall be used *without alteration*, except as otherwise provided in these rules, in a particular Official Form, or in the national instructions for a particular Official Form. Official Forms may be modified to permit minor changes not affecting wording or the order of presenting information, including changes that: (1) expand the prescribed areas for responses in order to permit complete responses; (2) delete spaces not needed for responses; or (3)

> delete items requiring details in a question or category
> if the filer indicates – either by checking 'no' or 'none'
> or by stating in words – that there is nothing to report
> on that question or category."

(emphasis added). Here, particularly with regard to the Sexual Abuse Proof of Claim, the Diocese proposes alterations not minor and for which no one has cited any authority for deviation from the Official Form. We are further obliged to follow the directives of Bankruptcy Rule 3001(a), which states that "[a] proof of claim shall conform substantially to the appropriate Official Form."

The Court does not need to decide at this time whether the use of modified forms as proposed by the debtor might still conform substantially to the Official Form. Rather, the problem with the Diocese's proposal involves its request to reject the use of Official Form 410. Having received the approval of the Judicial Conference of the United States, Form 410 must suffice to establish the timely filing of a proof of claim. The debtor also errs in proposing that a claim can be deemed disallowed unless modified within 30 days of a notice of the need for modification. Parties in interest can effect the disallowance of a claim only by following the procedures of Bankruptcy Rule 3007, which imposes on the objector a burden to file a formal objection on notice to the claimant.

Even if the Bankruptcy Rules were to allow the Court to compel use of a form that differed from the Official Forms, we would be disinclined to apply such an option in the present instance. For at least some abuse victims, the recitation of facts and details may impose emotional challenges. Such disclosures may be necessary at some appropriate time, but not in the context of filing a simple proof of claim. As stated in Bankruptcy Rule 3001(a), "[a] proof of claim is a written statement setting forth a creditor's claim." For this purpose, it suffices to respond briefly to question 8 of Official Form 410, which asks the claimant merely to state the basis of the claim. For some, a mandate to disclose more particular details may have a chilling effect on their

willingness even to file a claim. Instead, the proof of claim should serve as a means to identify claimants, although with a recognition that the claimant may need to respond thereafter to questions presented with sensitivity for the circumstances of any tort victim.

Attorneys will ultimately represent many of the abuse claimants. In all such instances, requests for information about the details of abuse are appropriately presented in the first instance to counsel. But the debtor proposes to send the bar date notice and claim forms directly to potential victims for whom an attorney has not yet appeared. For this reason, the supplemental inquiries are premature, and should instead be deferred until either counsel is identified or it becomes clear that no counsel is involved.

In as much as the Court will not mandate the use of an expanded proof of claim form, we need not address the request of the Catholic Mutual Relief Society of America to incorporate an even broader set of questions. Nothing in this decision precludes any interested party from making an appropriate request for information, either informally or through use of inquiries under Bankruptcy Rule 2004. The debtor might wish to consider a supplemental post-claim questionnaire. *Cf. In re A. H. Robins Co., Inc.*, 862 F.2d 1092 (4th Cir. 1988). We welcome a consideration of these or other approaches upon proper application at a future date.

Protocols for Filing Proofs of Claim

The Diocese has proposed a detailed set of protocols that it believes will help to maintain confidentiality for sexual abuse claimants. Its proposal includes the employment of Bankruptcy Management Solutions, Inc. (an entity operating under the trade name of "Stretto"), as an exclusive claims agent. The Diocese recommends that sexual abuse claimants be directed to file their proofs of claim with Stretto, that the claims be held and treated in confidence, and that access be restricted generally to

authorized parties who execute a confidentiality agreement.

In relevant part, 28 U.S.C. § 156(c) provides as follows:

> "Any court may utilize facilities or services, either on or off the court's premises, which pertain to the provision of notices, dockets, calendars, and other administrative information to parties in cases filed under the provisions of [the Bankruptcy Code], where the costs of such facilities or services are paid for out of the assets of the estate and are not charged to the United States."

The debtor has agreed that Stretto will be compensated from estate assets. Accordingly, we find that section 156(c) authorizes the employment of Stretto as a claims agent. Having duly considered the debtor's representations regarding the experience of Stretto in maintaining the confidentiality of claims in other cases, the Court will approve its appointment for the purpose of accepting claims. Section 107(b)(2) of the Bankruptcy Code states that this Court may "protect a person with respect to scandalous or defamatory matter contained in a paper filed in a case under this title." Because some of the abuse claims may involve information that is scandalous or defamatory to the claimant, we accept the Diocese's proposal to employ confidentiality protocols with regard to proofs of claim filed with Stretto. However, we deny the request to designate Stretto's agency as exclusive, and will allow the Bankruptcy Clerk to accept the filing of proofs of claim with full public access.

Bankruptcy Rule 5005(a)(1) provides generally that proofs of claim "shall be filed with the clerk in the district where the case under the Code is pending." Additionally, this rule directs that the Bankruptcy Clerk "shall not refuse to accept for filing any petition or other paper presented for the purpose of filing solely because it is not presented in proper form as required by these rules or any local rules or practices." Although willing to allow Stretto to serve as a claims agent, we find insufficient justification to preclude a party from filing a proof of claim with the

Bankruptcy Clerk.  Even without establishment of a bar date, the Bankruptcy Clerk has already received 22 proofs of claim, including at least one that alleges sexual abuse.  Such public filings are proper and will be allowed for the duration of this case.  To address concerns about privacy, any bar date notice should advise that confidentiality protocols will apply only to claims submitted to the claims agent.

Conclusion

      For the reasons and subject to the conditions stated herein, the Court will rule as follows: (1) the application to refer matters to mediation is denied, without prejudice to a future application for similar relief; (2) the debtor shall effect appropriate notice of a claims bar date of August 14, 2021; (3) proofs of claim shall comply substantially with Official Form 410; and (4) the debtor may employ a claims agent, who may accept proofs of claim on a non-exclusive basis.  In consultation with the Official Committee of Unsecured Creditors and any party who requests an opportunity to comment, the debtor shall prepare detailed orders that more fully memorialize the decision of this court.

      So ordered.

Dated: September 11, 2020        /s/ Carl L. Bucki_____
     Buffalo, New York        Hon. Carl L. Bucki, Chief U.S.B.J., W.D.N.Y.